

**SO ORDERED.**

**SIGNED this 18 day of May, 2011.**

_____
**JAMES D. WALKER, JR.
UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | CASE NO. 10-11904-JDW |
| PAUL O. FARR, | ) | |
| | ) | |
| DEBTOR. | ) | |
| | ) | |
| GEOFFREY CRISLER, CHRISTOPHER | ) | ADVERSARY PROCEEDING |
| CRISLER, and TIMOTHY SCOTT | ) | NO. 11-1009 |
| CRISLER, | ) | |
| | ) | |
| PLAINTIFFS, | ) | |
| | ) | |
| VS. | ) | |
| | ) | |
| PAUL O. FARR, | ) | |
| | ) | |
| DEFENDANT. | ) | |

BEFORE

JAMES D. WALKER, JR.

UNITED STATES BANKRUPTCY JUDGE

COUNSEL

For Plaintiffs:     Roy E. Manoll
                    Jeffrey W. DeLoach
                    2500 Daniell's Bridge Road
                    Building 200, Suite 3A
                    Athens, Georgia 30606

For Defendant:      William D. Newcomb
                    2600 Marquis Two Tower
                    285 Peachtree Center Avenue
                    Atlanta, Georgia 30303

**MEMORANDUM OPINION**

This matter comes before the Court on Plaintiffs' complaint to determine dischargeability of a debt and Debtor-Defendant's motion to dismiss. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(I). After considering the pleadings, the evidence, and the applicable authorities, the Court enters the following findings of fact and conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

**Background**

Debtor-Defendant Paul Farr filed a Chapter 13 case on October 29, 2010. Plaintiffs Geoffrey, Christopher, and Timothy Scott Crisler filed an adversary proceeding to determine the dischargeability of a debt pursuant to 11 U.S.C. § 523(a)(4) and (a)(6). Debtor filed a motion to dismiss the adversary proceeding for failure to state a claim. Plaintiffs thereafter withdrew their claim as to § 523(a)(6)[1] and filed a brief in support of their § 523(a)(4) claim. The Court held a hearing on the motion to dismiss on April 12, 2011. After considering the pleadings and the arguments of the parties, the Court will grant Debtor's motion.

**Factual Allegations**

Plaintiffs' complaint makes the following allegations: Plaintiffs are brothers whose mother was killed in a hit and run accident in the parking lot of a mall in December 2004. Shortly thereafter, Plaintiffs hired Debtor, an attorney, to pursue a wrongful death claim on their behalf. Although Debtor never filed a complaint or took any other steps to prosecute Plaintiffs' wrongful

---

[1] Section 523(a)(6) applies to debts resulting from a debtor's willful and malicious injury to a person or property. Such debts may be discharged in Chapter 13. 11 U.S.C. § 1328(a)(2).

3

death claim, he represented to Plaintiffs that he was making progress in their case and provided them with falsified documents to support his representations. Debtor's actions and representations included the following:

- providing Plaintiffs with a demand letter sent to an insurance company, but failing to provide them with the insurance company's reply indicating it did not provide liability coverage to the mall's owners;

- falsely advising Plaintiffs that he had drafted a complaint and interrogatories;

- advising Plaintiffs he had received an answer to the complaint, even though he had never filed a complaint;

- providing Plaintiffs with a falsified complaint, answer, interrogatories, and requests for production;

- falsely informing Plaintiffs that dates had been set for depositions and a trial;

- falsely informing Plaintiffs that the court had granted them summary judgment as to liability;

- falsely informing Plaintiffs of a $2 million settlement offer;

- kiting checks among his firm's multiple trust accounts for the purpose of creating a sufficient illusory balance to pay Plaintiffs.

Debtor ultimately wired $1 million to Plaintiffs. He borrowed money from his father-in-law, Richard Haugabook to cover the payment. Debtor told Mr. Haugabook and his law partners that he could repay the money upon receipt of insurance proceeds. He forged a letter from an insurance company to support his claims.

Debtor's law partners discovered his deceit, and alerted Plaintiffs and Mr. Haugabook. The law partners also prepared and filed a wrongful death complaint for Plaintiffs prior to expiration of the statute of limitations. Debtor's law firm withdrew from representation, and the wrongful death case was prosecuted to a settlement by different attorneys. Plaintiffs allege they

received a recovery of less than they would have received if the case had been filed sooner. Furthermore, they incurred various costs when Mr. Haugabook successfully sued them to recover the $1 million they received from Debtor.

## Conclusions of Law

At issue in this case is whether Plaintiffs' complaint should be dismissed for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7012(b). Under Federal Rule of Civil Procedure 8(a)(2), a pleading states a claim if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" To satisfy this standard, the plaintiff must set forth factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Furthermore, the allegations must set forth a plausible claim, allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

For purposes of a Rule 12(b)(6) motion, the Court assumes the allegations in the complaint are true. Bell Atlantic Corp., 550 U.S. at 589, 127 S. Ct. at 1985. Therefore, the Court assumes for purposes of this opinion only that Plaintiffs can establish a claim in Debtor's bankruptcy case based on the delay in filing their wrongful death suit and based on their liability to Mr. Haugabook for $1 million.

Plaintiffs contend they are entitled to relief under 11 U.S.C. § 523(a)(4), which excepts from discharge debts incurred by "fraud or defalcation while acting in a fiduciary capacity[.]"

Therefore, the complaint must allege fiduciary capacity and either fraud or defalcation.

Courts narrowly construe exceptions to discharge to protect the debtor's fresh start. Guerra v. Fernandez-Rocha (In re Fernandez-Rocha), 451 F.3d 813, 816 (11th Cir. 2006). Therefore, fiduciary capacity is likewise limited for purposes of § 523(a)(4). It does not arise in all confidential relationships; rather it requires the existence of a technical or express trust, which may be established by agreement or by statute. Quaif v. Johnson, 4 F.3d 950, 953-54 (11th Cir. 1993). The trust must meet three requirements: (1) it must pre-exist the act creating the debt; (2) it must impose trust-like duties; and (3) it must contain an identifiable trust res. General Produce, Inc. v. Tucker (In re Tucker), No. 06-50092, Adv. No. 06-5107, 2007 WL 1100482, at *4 (Bankr. M.D. Ga. April 10, 2007) (Walker, J.); Georgia Lottery Corp. v. Ingram (In re Ingram), No. 06-11313, Adv. No. 07-1013, 2008 WL 7842077, at *3 (Bankr. N.D. Ga. Feb. 29, 2008).

In this case, Plaintiffs did not allege the existence of a contract or other agreement creating a technical trust. Instead, they cited O.C.G.A. § 23-2-58, the Georgia confidential relations statute, as the basis for fiduciary capacity. The statute provides:

> Any relationship shall be deemed confidential, whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc.

O.C.G.A. § 23-2-58 (1982). This Court has previously considered this statute in the context of § 523(a)(4) and found it did not establish fiduciary capacity because it fails to designate trust property or to impose trust duties. Tarpon Point, LLC v. Wheelus (In re Wheelus), No. 07-30114, Adv. No. 07-3022, 2008 WL 372470, at *3 (Bankr. M.D. Ga. Feb. 11, 2008) (Walker, J.). As the

Ninth Circuit B.A.P. noted, "The broad definition of fiduciary under nonbankruptcy law–a relationship involving trust, confidence, and good faith–is inapplicable in the dischargeability context." Honkanen v. Hopper (In re Honkanen), 446 B.R. 373 (B.A.P. 9th Cir. 2011). Therefore, Plaintiffs have failed to sufficiently allege fiduciary capacity by citing to O.C.G.A. § 23-2-58.

Plaintiffs also allege they hired Debtor to serve as their attorney. The Georgia Rules of Professional Conduct set forth several duties an attorney owes to his clients, including competence,[2] diligence,[3] loyalty,[4] and confidentiality.[5] These are similar to the broad duties listed in O.C.G.A. § 23-2-58. None of these rules mention trust property and, therefore, they are ineffective to establish fiduciary capacity for purposes of § 523(a)(4). "It is the entrustment of property which superimposes a technical trust upon the attorney-client relationship and it is the existence of a technical trust which places the lawyer in a fiduciary capacity." Anderson v. Ingeneri (In re Ingeneri), 321 B.R. 601, 604-05 (Bankr. D. Maine 2005); Vahle v. Gasster (In re Gasster), 301 B.R. 568, 569-70 (Bankr. N.D. Cal. 2003).

---

[2] "A lawyer shall provide competent representation to a client. ... Competence requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Ga. R. Prof. Conduct 1.1.

[3] "A lawyer shall act with reasonable diligence and promptness in representing a client. Reasonable diligence as used in this Rule means that a lawyer shall not without just cause to the detriment of the client in effect willfully abandon or willfully disregard a legal matter entrusted to the lawyer." Ga. R. Prof. Conduct 1.3.

[4] "A lawyer shall not represent or continue to represent a client if there is a significant risk that the lawyer's own interests or the lawyer's duties to another client, a former client, or a third person will materially and adversely affect the representation of the client, except as permitted in (b)." Ga. R. Prof. Conduct 1.7(a).

[5] "A lawyer shall maintain in confidence all information gained in the professional relationship with a client[.] Ga. R. Prof. Conduct 1.6.

One Rule of Professional Conduct that carries all the earmarks of a technical trust is Rule 1.15(I). It requires a lawyer who is holding property of a client to keep the property segregated, to identify and safeguard the property, and to keep accounting records related to the property. Thus, it may serve as the basis to establish fiduciary capacity. During the April 12, 2011, hearing, Plaintiffs argued that Debtor created the necessary trust property when he advised Plaintiffs of a settlement and told them he was holding $1 million for them. However, the $1 million was not the proceeds of an actual settlement in which Plaintiffs had an interest. Furthermore, the $1 million did not pre-exist Debtor's misconduct. Instead, its creation was part of Debtor's wrongdoing. Debtor fabricated a settlement and fabricated settlement funds. Consequently, the money cannot comprise the trust res. Fernandez-Rocha, 451 F.3d at 816.

Also at the hearing, the Court raised the possibility that Plaintiffs' wrongful death cause of action constituted trust property. However, that proposition finds no support in trust or property law. On the contrary, only property subject to transfer by the settlor can become the subject matter of a trust. See O.C.G.A. § 53-12-25 (Supp. 2010) ("Transfer of property to a trust shall require a transfer of legal title to the trustee.") Under O.C.G.A. § 44-12-24 (2002), "[a] right of action for personal torts or for injuries arising from fraud to the assignor may not be assigned."  Thus, because personal injury actions are non-transferrable, Plaintiffs' wrongful death claim cannot comprise the res of a technical trust. See Rest. 3d Trusts § 40, comment d ("If the owner of property cannot transfer it to another to be held for the other's own benefit usually ... the owner will not be able either to transfer it to another to be held in trust or to make an effective declaration of trust.").

Because Plaintiffs have failed to allege the existence of trust property and fiduciary duties

relating to such property, the Court reluctantly concludes Plaintiffs have failed to allege facts establishing fiduciary capacity. Consequently, their complaint does not state a plausible claim for relief under § 523(a)(4) and must be dismissed.

Although the Court concludes dismissal is the correct legal result, Debtor's conduct with respect to Plaintiffs–assuming the allegations in the complaint are true–is egregious. He did not merely neglect Plaintiffs' wrongful death case; he actively lied and falsified documents to conceal his neglect. Consequently, he does not fit the mold of the "honest but unfortunate debtor" often invoked by courts when discussing the intended beneficiaries of bankruptcy's fresh start. Grogan v. Garner, 498 U.S. 279, 286-87, 111 S. Ct. 654, 659 (1991). However, neither proof of honesty nor proof unavoidable misfortune is a prerequisite to obtaining a discharge. Instead, the Code targets a relatively small number of narrowly defined bad behaviors through the 21 exceptions to discharge set forth in § 523(a). The limited nature of § 523 means some bad actors will obtain the full benefit of the discharge. This outcome is magnified in Chapter 13, in which only 7 of the 21 exceptions to discharge apply.[6] 11 U.S.C. § 1328(a)(2). This Court cannot contravene provisions of the Code to correct perceived injustices. Therefore, while the facts of this case cry out for a remedy, that cry can only be answered by Congress.

END OF DOCUMENT

---

[6] The purported trade off for the superdischarge is the expectation that debtors will repay a portion of their unsecured debt during the 3- to 5-year duration of the Chapter 13 plan. In practice, unsecured creditors often receive little to no recovery. In fact, the plan in this case proposes a 0% dividend.

9